**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.F., F.F., and C.F.**

**No. 24-629** (Braxton County CC-04-2023-JA-45, CC-04-2023-JA-46, and CC-04-2023-JA-47)

## MEMORANDUM DECISION

Petitioner Mother A.F.[1] appeals the Circuit Court of Braxton County's October 4, 2024, order terminating her parental rights to the children, T.F., F.F., and C.F.,[2] arguing that the circuit court erred by admitting expert witness testimony without proper disclosure. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September 2023, the DHS filed a petition alleging that the children were abused and neglected because the parents abused drugs to the extent that they were unable to properly care for the children and failed to provide the children with a fit and suitable home. According to the petition, the petitioner wrecked her vehicle while under the influence of methamphetamine with two of the children in the vehicle. The petitioner was arrested and charged with driving under the influence of a controlled substance with minors, failure to maintain her vehicle, and possession of a controlled substance. The petition further alleged that the father was incarcerated due to multiple convictions, including driving under the influence, burglaries, domestic violence, and breaking and entering. Finally, the petition alleged that the parents' home was in a deplorable condition.

In November 2023, the circuit court adjudicated the mother as an abusing and neglecting parent in regard to all of the children based upon her stipulation to the allegations in the petition and granted her a six-month post-adjudicatory improvement period, the terms of which included remaining sober and attending substance abuse counseling, among other things. In January 2024, the court adjudicated the father as an abusing and neglecting parent due to his drug abuse and failure to provide the children with a fit and suitable home. In March 2024, the father was released on parole and was living with the petitioner.

---

[1] The petitioner appears by counsel Daniel K. Armstrong. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Kristen E. Ross. Counsel Julia R. Callaghan appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

At a review hearing in April 2024, the court granted the father a six-month post-adjudicatory improvement period and extended the petitioner's improvement period. The terms of the parents' improvement period included, among other things, abstaining from drug and alcohol use and not associating with anyone who consumed, possessed, or was under the influence of drugs or alcohol. Finally, because the parents were residing together, the court advised them that they were "under an affirmative duty" to report any violations of the terms of the improvement periods by the other parent to the DHS or their attorneys.

In July 2024, the DHS filed a motion to revoke the parents' improvement periods and terminate their parental rights to the children after the father was arrested for parole violations and the petitioner was arrested for possession of a controlled substance and conspiracy. According to the record, parole officers conducted a compliance check on July 10, 2024, after receiving a report that the father was "dealing drugs" in another county. The father tested positive for methamphetamine and parole officers found methamphetamine in the petitioner's purse. On July 15, 2024, the DHS directed the petitioner to submit to a hair follicle screen, but she failed to appear and ignored phone calls from DHS workers. The following day, the petitioner submitted for the hair follicle screen, which was positive for methamphetamine.

In August 2024, the circuit court held an initial dispositional hearing, during which the court heard testimony from several witnesses, including two parole officers, the DHS case worker, and the petitioner, among others, and admitted the results of the petitioner's hair follicle test as evidence. The petitioner testified that she did not use methamphetamine and disputed the accuracy of the hair follicle test. She maintained that her positive test result was due to exposure to the father's use of methamphetamine. At the conclusion of the hearing, the court terminated the father's parental rights to the children, finding that he violated the terms of his improvement period by testing positive for methamphetamine on more than one occasion, by being in the presence of an acquaintance who was abusing controlled substances, and by failing to successfully complete the services that the DHS provided. The court continued the dispositional hearing with regard to the petitioner "to hear from Omega Labs to see if it is possible that [the petitioner] 'touched something' with Methamphetamine on it causing her positive test results."[3] On September 10, 2024, the DHS issued a subpoena to the lab director of Omega Laboratories to testify at the final dispositional hearing.

On September 18, 2024, the circuit court held the final dispositional hearing. At the start of the hearing, the petitioner objected to allowing the DHS's expert witness to testify because it did not file a witness list or provide the expert's curriculum vitae. However, the petitioner admitted that she had notice that "someone" would be called to testify about the petitioner's hair follicle test. The court overruled the objection, and the DHS presented testimony of the lab director from Omega Laboratories. After the court qualified the lab director as an expert in toxicology, he testified that the amount of methamphetamine detected in the petitioner's hair sample was above the "screening cutoff level." The lab director explained that the purpose of the cutoff level was "to rule out positive results due to environmental exposure." Thus, the lab director opined that the petitioner's positive test was indicative of methamphetamine use and was not caused by

---

[3] Omega Laboratories conducted the drug test on the petitioner's hair sample.

environmental exposure to methamphetamine. Finally, the lab director opined that based on the size of the sample collected from the petitioner and the average growth rate of hair, the petitioner had used methamphetamine at some point between May 2024 and July 2024.

After considering the evidence presented at both dispositional hearings, the circuit court found that the petitioner's denial of methamphetamine use was not credible, that she lived with the father who also was using methamphetamine, that she had an affirmative duty to report the father's drug use and failed to do so, and that she had not benefited from services or her improvement period. As a result, the court concluded that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, the court terminated the petitioner's parental rights.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in allowing and considering the testimony of the DHS's expert witness because the DHS failed to disclose the witness in accordance with Rule 10 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. The petitioner contends that she was unfairly prejudiced by the DHS's failure to disclose "any information about the expert, including his identity and qualification as an expert, such as his curriculum vitae (CV), education, experience, and any publications or relevant work, as well as the subject matter of the testimony" because she was deprived of the opportunity to investigate the expert's qualifications, retain a rebuttal expert, and prepare effective cross-examination questions. We find no merit to the petitioner's argument.

Rule 10(b)(5) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in relevant part, that "the attorney for the [DHS] shall provide to counsel for the respondent(s) . . . [a] written list of names and addresses of all witnesses whom the attorney for the [DHS] intends to call in the presentation of the case-in-chief." Although the DHS failed to file a witness disclosure as contemplated by Rule 10, the DHS filed a subpoena containing the expert's name and address more than one week before the final hearing. Thus, the petitioner had actual knowledge of the information that was required to be disclosed by Rule 10. In addition, the circuit court explained to the parties, on the record, that the purpose of the final dispositional hearing was for the DHS to present testimony from an employee of Omega Laboratories regarding whether environmental exposure to methamphetamine caused the petitioner to test positive. Therefore, not only did the petitioner have actual knowledge of the expert's name, but she also had actual knowledge of the expert's expected testimony. As such, the petitioner was not prejudiced by the DHS's failure to file a witness disclosure in accordance with Rule 10.

Even assuming that it was error for the circuit court to consider the expert's testimony, a review of the record shows that sufficient evidence existed to terminate the petitioner's parental rights outside of the challenged testimony. West Virginia Code § 49-4-604(c)(6) permits circuit courts to terminate parental rights "upon a finding that there is no reasonable likelihood that the

---

[4] The permanency plan for the children is adoption in their current placement.

conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." Pursuant to West Virginia Code § 49-4-604(d)(1), there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected when the abusing parent is "addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning." Here, the circuit court found that the petitioner continued living with the father despite his use of methamphetamine, that she failed to report the father's use of methamphetamine as ordered, and that she failed to benefit from the services she was provided—findings that the petitioner does not challenge on appeal. Further, the record shows that the petitioner was charged with possession of methamphetamine less than two months before the dispositional hearings. As such, the circuit court had ample evidence beyond the testimony of the DHS's expert upon which to base termination. Accordingly, the petitioner is entitled to no relief.

For the foregoing reasons, we affirm the circuit court's October 4, 2024, order.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

4